**2017 UT App 94**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.C.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

K.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170250-CA
Filed June 8, 2017

Second District Juvenile Court, Farmington Department
The Honorable Janice L. Frost
No. 1139124

Jason B. Richards, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES J. FREDERIC VOROS JR., STEPHEN L. ROTH, and
DAVID N. MORTENSEN.

PER CURIAM:

¶1      K.C. (Mother) appeals the March 23, 2017 "findings,
conclusions and dispositional order" entered on the State's
amended petition for protective supervision. Specifically,
Mother appeals that part of the order substantiating the Division
of Child and Family Services' (DCFS) supported finding that
Mother failed to protect A.C. from sexual abuse by Mother's
boyfriend. We affirm.

¶2 Mother neither admitted nor denied the allegations of the amended petition. Accordingly, the juvenile court deemed the factual allegations to be true. *See* Utah R. Juv. P. 34(e) ("Allegations not specifically denied by a respondent shall be deemed true."). The juvenile court found that Mother's boyfriend was a registered sex offender who sexually abused a twelve-year-old girl in January 2004, and that he was convicted of rape of a child, a first degree felony, and sentenced to six years to life in prison. The juvenile court found that Mother was aware of her boyfriend's criminal history and aware that he was a registered sex offender. "Knowing and having reason to know about her boyfriend's sex abuse history, [Mother] allowed her child and [her boyfriend] to have contact with each other and reside together." While Mother and A.C. resided with Mother's boyfriend, the boyfriend sexually abused A.C. In an interview with law enforcement, A.C. said that the boyfriend and A.C. showered together nude. A.C. also told law enforcement that the boyfriend threatened that she would be grounded if she did not shower with him. A.C. described an incident where the boyfriend digitally penetrated her vagina while they were resting in bed together.

¶3 The following additional factual findings are relevant to Mother's claims in this appeal. In 2012, prior to getting into a relationship with the boyfriend, Mother met with the boyfriend's counselor and got permission to start dating him. Prior to being released from his counseling, the boyfriend passed a polygraph test and a PPG.[1] After dating for two years, Mother and her children moved in with the boyfriend. Parole officers continued to supervise the boyfriend and came in to check on the family until August 2016 when he was released from parole. Mother signed a form with the boyfriend's parole officer "indicating that it was appropriate for the boyfriend and her daughter to have contact with each other." After DCFS initiated a child welfare

---

1. PPG is an acronym for "penile plethysmograph" test, which is intended to measure sexual arousal.

investigation of suspected abuse, Mother signed a safety plan that included requirements that Mother and A.C. would not reside with Mother's boyfriend, and that Mother would not allow contact between the boyfriend and A.C. Mother and the child thereafter moved in with Mother's parents.

¶4    The juvenile court's "review findings, conclusions, and order" of March 21, 2017, addressed the substantiation issue that had been under advisement at the adjudication hearing. In that order, the juvenile court found that Mother's "actions in allowing a live-in relationship with the known sex offender was not reasonable or prudent because [Mother] placed her child in a position of being sexually abused." The court also found, "It was not reasonable for [Mother] to have her child reside with a known sex offender," and "was likely not reasonable for [Mother] not to have ensured that her boyfriend would only have supervised contact . . . with the child." Finally, Mother's "actions were not reasonable in preventing sexual abuse and her failure to act reasonably caused her child to be sexually abused by her boyfriend." The juvenile court found in the March 21, 2017 order that the boyfriend sexually abused A.C. and that Mother neglected A.C. by failing to protect the child. In the subsequent dispositional order entered on March 23, 2017, the juvenile court found, "by a preponderance of the evidence that the supported findings of [DCFS] are substantiated and includes the finding in its order, within the meaning of Utah Code Ann. § 78A-6-323 and 62A-4a-1006."

¶5    Utah Code section 78A-6-323 states, in relevant part:

(1) Upon the filing with the court of a petition under Section 78A-6-304[2] by the Division of

---

2. Utah Code section 78A-6-304 defines a "petition" as "a petition to commence proceedings . . . alleging that a child is[] (a) abused[,] (b) neglected[,] or (c) dependent. *See* Utah Code Ann. § 78A-6-304(1) (LexisNexis 2012).

Child and Family Services or any interested person informing the court, among other things, that the division has made a supported finding that a person committed a severe type of child abuse or neglect as defined in Section 62A-4a-1002, the court shall:

(a) make a finding of substantiated, unsubstantiated, or without merit;

(b) include the finding described in Subsection (1)(a) in a written order; and

(c) deliver a certified copy of the order described in Subsection (1)(b) to the division.

Utah Code Ann. § 78A-6-323(1) (LexisNexis Supp. 2016). Utah Code section 62A-4a-1002(1)(a)(i)(C) defines "severe type of child abuse" to include sexual abuse of a child. *Id.* § 62A-4a-1002(1)(a)(i)(C) (LexisNexis 2011). Thus, the boyfriend's sexual abuse of A.C. was a severe type of child abuse, as defined by statute. An adjudication of a supported finding of abuse or neglect that is not a severe type of child abuse or neglect "may be joined in the juvenile court with an adjudication of a severe type of child abuse or neglect." *Id.* § 78A-6-323(4) (LexisNexis Supp. 2016). Therefore, the juvenile court could adjudicate the request to substantiate the supported finding of failure to protect by Mother along with the adjudication of the supported finding that the boyfriend sexually abused A.C. Accordingly, the juvenile court in this case was informed in the petition that DCFS had made supported findings that the boyfriend sexually abused A.C. and Mother failed to protect A.C. from sexual abuse.

¶6 "[I]n order to overturn the juvenile court's decision, [t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (second alternation in original) (citations and internal quotation marks omitted). "When a foundation for the court's

decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶7    Mother seeks reversal only of the juvenile court's substantiation of DCFS's supported finding that Mother failed to protect A.C. Mother does not dispute that A.C. was properly adjudicated to be an abused child or that Mother's boyfriend abused A.C. However, Mother argues that the juvenile court's findings of fact do not support its order substantiating DCFS's supported finding of failure to protect. Mother argues that the juvenile court's factual findings "outline the protective factors . . . Mother set into place prior to moving in with [her boyfriend] with her two children." Mother argues that although she was aware of her boyfriend's criminal history, she "dated and participated in counseling with [her boyfriend] for over three years before deciding to move in with him." She asserts that her boyfriend took and passed a polygraph test and a PPG, which she characterizes as "a common indicator that sex offender treatment is successful." Therefore, Mother asserts that she "placed enough protective factors into place and she thought her children would be safe." Mother also states that immediately after she learned of the abuse, she signed a safety plan, moved out of her boyfriend's home, and ceased contact with him.

¶8    Mother further argues that there was no evidence that she was aware of the abuse until after it occurred, that she failed to report the abuse, or that she attempted to conceal it. She challenges the juvenile court's ruling at the March 21, 2017 hearing as relying solely on the fact that Mother brought her children to live with a convicted sex offender to support its conclusion that she failed to protect A.C. from abuse. Mother argues that under the juvenile court's reasoning, "[e]ven if you take steps to mitigate the risk, like attending couples' therapy, ensuring compliance with parole responsibilities, and requesting the offender to undergo testing to verify compliance, even success, with treatment is not enough to mitigate a failure to protect finding on the licensing database of the Division."

¶9 The State and the Guardian ad Litem contend that Mother's petition on appeal mischaracterizes the juvenile court's findings of fact and "takes substantial liberties in their interpretation" by asserting that the findings support that Mother put protective measures in place that should preclude any conclusion that she failed to protect A.C. from sexual abuse. The juvenile court did not characterize any of Mother's actions as protective measures. While Mother contends that the juvenile court found she engaged in couples' therapy, the factual finding stated only that she "met" with the boyfriend's counselor. The State argues that "[t]he boyfriend's probation officer did not validate her decision to move in with him, rather Mother signed-off on the arrangement with the probation officer." The juvenile court's actual finding states, "The mother signed a form with [her boyfriend's] parole officer indicating that it was appropriate for [her boyfriend] and her daughter to have contact with each other." There is no support for Mother's implicit assertion that the parole officer could approve of the living arrangement and thereby insulate Mother from her parental responsibility to keep A.C. safe from abuse.

¶10 Mother claims that because she allegedly put substantial protective measures into place, the juvenile court's substantiation decision means that "every person who brings a child to live with a convicted sex offender is guilty of 'failure to protect.'" However, the juvenile court's decision was limited to the facts of this case, which do not support Mother's central claim that she took substantial protective measures to mitigate any risk to her children. Instead, the undisputed facts demonstrated that Mother allowed unsupervised contact between her boyfriend and A.C., which allowed him to shower nude with A.C. and to digitally penetrate her vagina. The assertion that Mother was not aware that the abuse was occurring does not support the claim that she took adequate protective measures. Under these circumstances, the juvenile court was not called upon to decide what, if any, protective measures would be sufficient to prevent a parent from being found to have failed to protect a child from abuse by a known

sex offender with whom the child is residing. Similarly, this court does not address that hypothetical issue in this appeal.

¶11 The juvenile court's decision to substantiate the supported finding that Mother failed to protect A.C. is supported by the juvenile court's findings of fact and by the undisputed facts alleged in the State's petition. Because "a foundation for the court's decision exists in the evidence," this court "may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Accordingly, we affirm.

———————